# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

ENFORCEMENT SECTION OF THE )
MASSACHUSETTS SECURITIES DIVISION )
OF THE OFFICE OF THE SECRETARY OF )
THE COMMONWEALTH[1] )
                                )
Plaintiff, )
                                )
v. )        Civil Act. No. 1:18-cv-10508-NMG
                                )
SCOTTRADE, INC., )
                                )
Defendant. )
_____)

## PLAINTIFF ENFORCEMENT SECTION OF THE
## MASSACHUSETTS SECURITIES DIVISION'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO REMAND

By its Attorneys,

MAURA HEALEY
ATTORNEY GENERAL

Pierce O. Cray, BBO # 104630
Amanda I. Morejon, BBO # 696737
Assistant Attorneys General
Government Bureau
One Ashburton Place
Boston, MA 02108
(617) 963-2084/2037
Pierce.Cray@state.ma.us
Dated: April 13, 2018               Amanda.Morejon@state.ma.us

---

[1]     The defendant has mistakenly captioned the plaintiff in this case. In the state administrative proceeding that was removed, the initiating party in the Administrative Complaint (*i.e.*, the plaintiff) was the Enforcement Section of the Massachusetts Securities Division. *See* Adm. Compl. (Notice of Removal Exh. 1) pp. 1, 5, 19, ¶¶ 2, 4, 96, 99. The Enforcement Section should continue to be the named plaintiff in the caption of the case in this Court upon its removal, and that change is made above.

# TABLE OF CONTENTS

RELEVANT BACKGROUND 1

 I. The Securities Division Has Investigatory Powers, Rule-Making Authority, and a Limited Adjudicatory Role. 1

 II. The Enforcement Section of the Securities Division Filed an Administrative Complaint Because Scottrade Had Violated Its Own Internal Policy, Which Happened to Be Modeled After the Fiduciary Rule, and Which Was Ostensibly Intended to Protect IRA Holders. 3

ARGUMENT 5

 I. UNDER THE "WELL-PLEADED COMPLAINT RULE," THIS COURT WOULD HAVE LACKED ORIGINAL JURISDICTION OVER THE ENFORCEMENT SECTION'S STATE-LAW CLAIMS HAD THE ENFORCMENT SECTION ATTEMPTED TO FILE A FEDERAL LAWSUIT. 5

  A. An ERISA-Based "Complete Preemption" Exception to the Well-Pleaded Complaint is Inapplicable Here. 7

   1. ERISA's Preemption Provisions Do Not Apply to IRAs. 8

   2. Even If ERISA's Preemptive Provisions Were to Extend to IRAs, Complete Preemption Would Still Be Unavailable, Because the Doctrine Applies Only When Plaintiff Could Have Sued in This Court Under ERISA's Civil Suit Provision, and the Enforcement Section, as a State Agency, Plainly Could Not Have So Sued. 10

  B. There Is No "Substantial Federal Question" Embedded Within the Enforcement Section's Massachusetts Securities Act Claim. 13

 II. REMOVAL ALSO FAILS BECAUSE THE ENFORCEMENT SECTION'S ADMINISTRATIVE COMPLAINT WAS NOT INITIALLY BROUGHT IN A STATE COURT. 15

CONCLUSION 20

This case is a dispute between the plaintiff Enforcement Section of the Massachusetts Securities Division of the Office of the Secretary of the Commonwealth ("Enforcement Section") and the defendant Scottrade Inc. ("Scottrade") regarding Scottrade's violation of the Massachusetts Securities Act. The matter began when the Enforcement Section filed an administrative complaint with the Securities Division, alleging that Scottrade had violated Section 204 of the Massachusetts Securities Act when it did not follow its own internal policies—specifically, its own "Impartial Conduct Standards Applicable to . . . Retirement Accounts"—when it ran a series of aggressive sales contests involving individual retirement accounts ("IRAs").[2] While Scottrade has attempted to remove the agency-level Securities Division proceeding to this Court, it fails to satisfy the terms of the removal statute, 28 U.S.C. 1441(a), in two separate respects. As an initial matter, an action by a state agency to enforce the Massachusetts Securities Act is not one "of which the district courts of the United States would have original jurisdiction," 28 U.S.C. § 1441(a), as even Scottrade itself does not contend that the Enforcement Section could have filed its action in this Court. Moreover, the action was also not initially "brought in a State court," *id.*, but instead was filed within a State administrative agency. *Id.* Accordingly, this Court should remand the matter.

## RELEVANT BACKGROUND

I. **The Securities Division Has Investigatory Powers, Rule-Making Authority, and a Limited Adjudicatory Role.**

The Massachusetts Securities Act is "administered by the [S]ecretary [of State]," Mass. G.L. c. 110A, § 406(a), who "may employ such assistants and other employees as are required"

---

[2]     The hearing officer assigned to preside over the administrative proceeding is not a party to this case, is taking no position on anything asserted in it, and is walled off from all internal discussions regarding the case.

"[f]or the administration and enforcement of the [Act]." Mass. G.L. c. 9, § 10A. Given this mandate, the Secretary "established . . . the Securities Division . . . to administer and enforce [the Securities Act,] Mass. G.L. c. 110A[,] and the [the regulations promulgated thereunder], 950 C.M.R. 10.00 through 14.413." 950 C.M.R. § 14.406(A)(1). The Securities Division is headed by the "Director" and consists of a number of sub-sections, including the Enforcement Section. 950 C.M.R. § 14.406(A)(1). As developed below, the Securities Act gives the Securities Division investigatory powers, rule-making authority, and a limited adjudicatory role.

The Securities Division thus may "make . . . public or private investigations within or outside of the [C]ommonwealth." Mass. G.L. c. 110A, §407(a)(1). These investigatory powers extend to the ability "subpoena witnesses" and collect evidence, *id*. at § 407(b), and include a responsibility to protect any "investigatory materials necessarily received or compiled out of the public view," so as to prevent "prejudic[ing] the possibility of effective law enforcement." 950 C.M.R. § 14.413(A). The Securities Division also has legislative authority. Through its Director, the Securities Division may "make, amend and rescind such rules, forms, and orders as are necessary to carry out the statutory policy of the [Securities Act]." 950 C.M.R. § 14.406; *see* Mass. G.L. c. 110A, § 412(a). As part of these rule-making powers, the Securities Division may issue "interpretative opinions" to "interested parties," Mass. G.L. c. 110A, § 413(c), and "define terms . . . not inconsistent with the [Securities Act]." *Id*. at § 412(a).

Finally, while the Securities Division "is empowered to hear . . . matters," 950 C.M.R. § 14.406, and may conduct "adjudicatory proceedings," *id*. § 10.02(b)(1), its powers and procedures differ considerably from those of an actual court. An adjudicatory hearing thus "shall be as informal as may be reasonable and appropriate under the circumstances," 950 C.M.R. § 10.09(f)(1), and unless it is conducted by the Director of the Securities Division, the presiding

hearing officer "shall prepare recommended findings of fact and conclusion of law to be submitted to the Director," (or, in appropriate instances, Acting Director). *Id*. § 10.09(p). The Director/Acting Director then "may approve, reject or modify the recommendation of the hearing officer." *Id*. Once a final decision has issued, a person "aggrieved by . . .[it] may obtain judicial review" not in an appellate court, but instead in state superior court under the Massachusetts Administrative Procedure Act, Mass. G.L. c. 30A, § 14. *See* Mass. G.L. c. 110A, § 411(a). During the course of the administrative proceedings, if a witness refuses to obey a subpoena issued by the Securities Division, the agency cannot enforce the subpoena directly itself, but instead must turn to "the superior court for the county in which the person is found" to "issue to the person an order requiring him to appear before the [Division]." *Id*. at § 407(c). And if the Securities Division seeks to enjoin the acts or practice of an individual in violation of the Massachusetts Securities Act under penalties of contempt, it again cannot issue an injunction directly itself, but rather must "bring an [injunction] action in the superior court." *Id*. at § 408.

II.     **The Enforcement Section of the Securities Division Filed an Administrative Complaint Because Scottrade Had Violated Its Own Internal Policy, Which Happened to Be Modeled After the Fiduciary Rule, and Which Was Ostensibly Intended to Protect IRA Holders.**

In 2016, the Department of Labor ("USDOL") promulgated the "Fiduciary Rule," a set of regulatory changes that, *inter alia*, expands the "investment advice fiduciary" definition under the Employee Retirement Income Security Act of 1974 ("ERISA") to include "an individual or entity who is . . . a representative of a . . . bank or similar financial institution, an insurance company, or a broker-dealer." 81 Fed. Reg. 20945, 20956 n.1 (2016). Under the Fiduciary Rule, financial advisers must "make recommendations that are in their client's best interest," including "IRA recommendations that are prudent and loyal." 82 Fed. Reg. 16902, 16909 (2017). In particular, and as the preceding quotes suggest, the Fiduciary Rule's "impartial conduct"

- 3 -

standard now requires all financial institutions that deal with holders of self-funded individual

retirement accounts ("IRAs"), such as Scottrade, to "adopt policies and procedures reasonably

designed to mitigate any harmful impact of conflicts of interests."  81 Fed. Reg. at 20947.[3]

In response to the Fiduciary Rule, Scottrade added to its own binding internal policies a

requirement entitled "Impartial Conduct Standards Applicable to Covered Recommendations in

Retirement Accounts" that prohibits its associates from "mak[ing] recommendations that are not

in the best interest of Retirement Account clients"—*i.e.*, to its IRA holders.  Adm. Compl. p. 3,

¶ 32.  Scottrade's "Impartial Conduct Standards" specifically bar "contest [and] special

awards . . . that are intended or reasonably expected to cause associates to make such

[inappropriate] recommendations." *Id*. p. 3.  Despite adopting these policies, Scottrade continued

to run aggressive sales contests that did not distinguish between IRA holders and other account

holders. *Id*. ¶¶ 32, 34-36.  By knowingly including IRA holders in the sales contests, Scottrade

violated its own internal policies regarding impartial conduct standards for recommendations in

IRAs, which it had adopted as a company-wide internal standard of conduct.  *Id*. ¶ 57.

Accordingly, the Enforcement Section filed an Administrative Complaint with the

Securities Division to vindicate the rights of IRA holders, alleging that Scottrade's sales contests

"could reasonably be expected to cause Scottrade agents to make recommendations in their own

best interests rather than the best interests of their customers, including those with retirement

accounts"—*i.e.*, IRA holders.  *Id*. p. 1, 4.  The Administrative Complaint charged that, by not

"remov[ing] retirement assets from the scope of the [sales] contests, or ensur[ing] compliance

---

[3]         USDOL thus "concluded that the [preexisting] regulation of providing investment
services to IRA holders [wa]s insufficient," *Chamber of Commerce of the U.S. v. U.S. Dep't of
Labor*, 885 F.3d 360, 365 (5th Cir. 2018), and by the Fiduciary Rule it "extend[ed] . . . statutory
duties of prudence and loyalty to brokers . . . who sell to IRA plans."  *Id*. at 384.

with internal policies regarding the Fiduciary Rule," *id.* ¶ 36, p. 10, Scottrade had engaged in "unethical or dishonest conduct or practices in the securities . . . business," as prohibited by Mass. G.L. c. 110A, § 204(a)(2)(G), and had "failed to reasonably supervise agents, investment adviser representatives or other employees to assure compliance with [chapter 110A]," as required by c. 110A, § 204(a)(2)(J). Adm. Compl. ¶¶ 95-100.

## ARGUMENT

The removal statute provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant." 28 U.S.C. § 1441(a). As developed below, Scottrade's attempted removal fails to satisfy this language in two respects, each of which is sufficient to dictate remand. First, the Enforcement Section's State-law action to enforce the Massachusetts Securities Act is not one "of which the district courts of the United States would have original jurisdiction." *See* Argument I below. Second, the Enforcement Section's agency-level action was also not initially "brought in a State court." *See* Argument II below. This Court should accordingly remand the matter.[4]

I. **UNDER THE "WELL-PLEADED COMPLAINT RULE," THIS COURT WOULD HAVE LACKED ORIGINAL JURISDICTION OVER THE ENFORCEMENT SECTION'S STATE-LAW CLAIMS HAD THE ENFORCEMENT SECTION ATTEMPED TO FILE A FEDERAL LAWSUIT.**

The only basis that Scottrade cites for why original jurisdiction over this matter would have existed had the Enforcement Section attempted to file its claims in this Court is "federal-question jurisdiction," *see* Notice of Removal ¶¶ 1, 7, under which 28 U.S.C. § 1331 grants

---

[4]    The removal statute does not in itself create jurisdiction; instead, it is "strict[ly] constru[ed]," *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109 (1941), with a defendant seeking to remove an action having "the burden of showing the federal court's jurisdiction." *Danca v. Priv. Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999).

"[t]he district courts jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  As the First Circuit has recognized, Section 1331's "'arising under' analysis is informed by the well-pleaded complaint rule, which requires the federal question to be stated on the face of the plaintiff's well-pleaded complaint."  *Lopez-Munoz v. Triple-S Salud, Inc.*, 754 F.3d 1, 4 (1st Cir. 2014).  This means both that "whether a case is one arising under . . . a law . . . of the United States . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration," *Aetna Health Inc. v. Davila*, 542 U.S. 209, 207 (2004), and that "the existence of a federal defense normally does not create . . . 'arising under' jurisdiction," *id.*, even "when the defendant asserts that the plaintiff's local-law claims are preempted by federal law."  *Lopez-Munoz*, 754 F.3d at 4-5.  Here, the Enforcement Section has charged Scottrade with violating a quintessentially state law: Section 204 of the Massachusetts Securities Act, M.G.L. 110A, § 204.  Adm. Compl. p. 1, ¶¶ 3, 95-100.  Pursuing "a violation of any provision of this chapter [M.G.L c. 110A]" is, after all, exactly the type of action that the Enforcement Section is statutorily authorized to seek an agency-level adjudicatory proceeding for.  M.G.L. c. 110A, § 407A; *see* Adm. Compl.  ¶ 2, pp. 18-19.  "On its face, then, the [Administrative C]omplaint presents no federal question," *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999), and the well-pleaded complaint rule would presumptively bar both an original filing by the Enforcement Section (had it attempted one) and Scottrade's purported removal.

Anticipating what the ordinary result would be for an action claiming violation of a state statute, Scottrade appears to try to fit within two recognized exceptions to the well-pleaded complaint rule.  A recent decision in this District describes those exceptions:

> In the great majority of cases, a suit "arises under the law that creates the cause of action." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for*

> *S. California,* 463 U.S. 1, 8, . . . (1983) . . . . However, there are two exceptions.
> First, under the *Smith* doctrine, a case may "arise under" federal law if the state-
> law right necessarily requires resolution of a substantial question of federal
> law. *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 201 . . . (1921).
> Second, an action may also "arise under" federal law if a federal statute
> completely preempts the state-law cause of action.

*Mass. v. Wampanoag Tribe*, 36 F.Supp.3d 229, 232-33 (D. Mass. 2014) (Saylor, J.); *see One and Ken Valley Hous. Group v. Me. St. Hous. Auth*., 716 F.3d 218, 224 (1st Cir. 2013) (alternatively referring to "*Smith* doctrine" as "federal ingredient doctrine").  Scottrade places primary reliance on the "complete preemption" exception, Notice of Removal ¶¶ 3, 5-10, 12, but also appears to invoke the "*Smith*" or "federal ingredient" exception, *id*. ¶¶ 4, 11.  Neither in fact applies.

### A.    An ERISA-Based "Complete Preemption" Exception to the Well-Pleaded Complaint Is Inapplicable Here.

"[C]omplete preemption comprises a narrow exception to the well-pleaded complaint rule." *Lopez-Munoz*, 754 F.3d at 5.  Under the complete-preemption doctrine, "[w]here a claim, though couched in the language of state law, implicates an area of federal law for which Congress intended a particularly powerful preemptive sweep, the cause is deemed federal no matter how pleaded," *Danca*, 185 F.3d at 4, and therefore is properly removable.[5]  There is no dispute that ERISA is one of the few federal statutes that can provide the basis for complete preemption.  The reason for ERISA's inclusion is to protect the integrity of ERISA's "integrated [civil] enforcement mechanism, ERISA § 502(a), 29 U.S.C. § 1132(a)," which "is a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200,

---

[5]    "The doctrine of complete preemption is conceptually distinct from the doctrine or ordinary (or defensive) preemption:  the latter defends against a plaintiff's local-law claims without any jurisdictional ramifications, but the former clears a path -- albeit one that is rarely traversed successfully -- into federal court." *Lopez-Munoz*, 754 F.3d at 5.

208 (2004). [6] As the Supreme Court has explained complete preemption under ERISA, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id*. at 209.

For two separate reasons, the Enforcement Section's administrative action to enforce the Massachusetts Securities Act for the benefit of Scottrade's IRA account holders is not such a "state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy." First, the ERISA civil enforcement statute cited by the Supreme Court, 29 U.S.C. § 1132, does not even apply to IRAs, which instead fall under a separate title of ERISA. *See* Argument IA1 below. Second, even if IRAs were to fall under the civil enforcement statute, the Enforcement Section's action would not be one that "supplicates, supplements, or supplants" the statute, because that can occur only when the particular plaintiff itself could have sued directly under Section 1132, and it is undisputed that the Enforcement Section could not have done so here. *See* Argument IA2 below.

### 1.     ERISA's Preemption Provisions Do Not Apply to IRAs.

"When parties and courts refer to ERISA, more often than not, they mean Title I of the Act," which "is the portion of the law that regulates retirement plans *established or maintained by employers*, unions, or both." *Nat'l Ass'n for Fixed Annuities v. Perez*, 217 F.Supp.3d 1, 10 (D.D.C. 2016) (emphasis added). The civil enforcement statute that underlies the ERISA complete-preemption doctrine, ERISA § 502(a) (29 U.S.C. § 1132(a)), indeed falls within Title I.

---

[6]     Although ERISA has an additional preemption provision that preempts certain state *laws*, *see* ERISA § 514 (29 U.S.C. § 1144), it provides an "affirmative federal defense," *Danca*, 185 F.3d at 4, and hence has no bearing on either complete preemption or removal. *See*, *e.g*., *id*. ("Standing alone, the likelihood or even certainty of defendants' raising a colorable ERISA § 514 preemption defense is no basis for federal jurisdiction").

*See* Pub. L. No. 93-406, Title I, Subtitle B, Part 5, § 502 (1974). But ERISA has other Titles as well, including Title II. That Title "sweeps more broadly than Title I: in addition to covering plans established and maintained by employers, Title II applies to IRAs and other plans not subject to Title I." *Perez*, 217 F.Supp.3d at 10. Because the Enforcement Section's action is taken with respect to Scottrade's treatment of individual investors holding IRAs, rather than those included within employer-sponsored plans, *see* Relevant Background Section II *supra*, Title I has no bearing here, and the only arguably relevant portion of ERISA is Title II.

That distinction is dispositive for purposes of preemption. "In ERISA, Congress authorized private rights of action for participants and beneficiaries of employer sponsored plans, 29 U.S.C. § 1132(a), but it did not so privilege IRA owners under Title II." *Chamber of Commerce of the U.S. v. U.S. Dep't of Labor*, 885 F.3d 360, 384 (5th Cir. 2018). Because "Title II does not . . . create a private cause of action," it "correspondingly . . . does not preempt state law causes of action relating to IRAs and other [retirement] plans not subject to Title I." *Perez*, 217 F.Supp.3d at 11. Instead, "state law and other remedies remain available to those investors." *Chamber of Commerce*, 885 F.3d at 364. The simple truth is that "ERISA preemption provision[s] do[ ] not govern IRAs," *Lazar v. Kroncke*, 862 F.3d 1186, 1198 (9th Cir. 2017),[7] and Scottrade's attempted invocation of ERISA preemption is no more fitting for this case than a square peg is for a round hole.

---

[7]      *Accord In Re Weihoeft*, 275 F.3d 604, 605 (7th Cir. 2001) ("To the extent that this [state] statute speaks to pensions regulated by ERISA [Title I] it is preempted . . . ; to the extent it deals with individual retirement accounts, . . . it is not preempted"); *In Re Schwartz*, 185 B.R. 479, 487 (D.N.J. 1995) ("an IRA account is outside the preemptive scope of ERISA") (quoting *In Re Printy*, 171 B.R. 448, 450 (D. Mass. 1994) (Feeney, J.)); *In Re Herrscher*, 121 B.R. 29, 31 (D. Ariz. 1989) ("IRAs were not intended to be within the scope of the preemptive provisions of Title I of ERISA").

2.     **Even If ERISA's Preemptive Provisions Were to Extend to IRAs, Complete Preemption Would Still Be Unavailable, Because the Doctrine Applies Only When the Plaintiff Could Have Sued in This Court Under ERISA's Civil Suit Provision, and the Enforcement Section, as a State Agency, Plainly Could Not Have So Sued.**

Scottrade's attempt at complete preemption faces another insurmountable barrier, even were IRAs assumed to fall within the scope of ERISA Title I and its civil enforcement provision, ERISA § 502(a) (29 U.S.C. § 1132(a)). That further bar is that it is an "essential requirement[ ] for complete preemption" that "the plaintiff must have had standing under § 502(a) to pursue its claim," *In Re Pharm. Indus. Average Wholesale Price Litig*., 309 F.Supp.2d 165, 172 (D. Mass. 2004) (Saris, J.), and even Scottrade itself admits that the Enforcement Section would lack such standing here. *See* Answer to Adm. Compl. (Notice of Removal Exh. 7) pp. 9-10, ¶ 1.

ERISA Section 502(a) authorizes ten carefully defined civil enforcement proceedings that specific entities can bring in federal court. 29 U.S.C. § 1132(a). The most commonly invoked provision is Section 502(a)(1)(B), which allows suits "by a[n ERISA] participant or beneficiary . . . (B) to recover benefits due to him under the terms of his [ERISA] plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id*. § 1132(a)(1)(B). The only one of the ten provisions that authorizes a State to sue is Section 502(a)(7), which provides that "[a] civil action may be brought . . . (7) by a State to enforce compliance with a qualified medical support order . . . ." 29 U.S.C. § 1132(a)(7). A "qualified medical support order" is obviously not at issue here, and Scottrade is most certainly correct that the Enforcement Section has no authority to bring suit in federal court under Section 502(a) on the basis of its current claims. Answer to Adm. Compl. pp. 9-10, ¶ 1.

This again is fatal to any assertion of complete preemption. The Supreme Court's most recent and definitive decision regarding ERISA complete preemption is *Davila*, 542 U.S. at 200.

- 10 -

That case established the current standard: "if an individual, *at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)*, and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely preempted." *Id*. at 210 (emphasis added). The just-emphasized language in *Davilla* looks to "whether the plaintiff is the *type* of party that can bring a claim pursuant to § 502(a)(1)(B)," *Montefiore Med. Crt. v. Teamsters Local 272*, 642 F.3d 321, 328 (2nd Cir. 2011) (emphasis in original), or, in the Second Circuit's alternative phrasing, to whether "the[ claims] are brought by an individual who has standing to assert rights under . . . § 502(a)(1)(B)"), *id*. at 328 n.7. And while the Supreme Court and Second Circuit have spoken specifically regarding ERISA Section 502(a)(1)(B), the most commonly invoked part of Section 502(a) and the one specifically at issue in the cases then before those courts, *Davila*'s reasoning reaches Section 502(a) generally, as the Third Circuit has recognized:

> We have held that a claim is completely preempted, and thus removable, under ERISA § 502(a) only if: (1) the plaintiff could have brought the claim under § 502(a); *and* (2) no other independent legal duty supports the plaintiff's claim . . . . Because the test is conjunctive, a state-law cause of action is completely preempted only if both of its prongs are satisfied.

*N.J. Carpenters v. Tishman Consrtuc. C*o., 760 F.3d 297, 303 (3rd Cir. 2014) (citing *Davila*).

    *Davila*'s requirement that the plaintiff be the "type of party" that "has standing" to sue under ERISA § 502(a), *Montefiore*, 642 F.3d at 328 & n.7, has been enough to sink a claim of complete preemption. The Second Circuit ruled just that last year, *McCulloch Ortho. Surg. Svcs. v. Aetna Inc*., 857 F.3d 141, 146-49 (2nd Cir. 2017), and a decision in this District quite presciently anticipated *Davila* to the same effect in 2002, *Nahigian v. Leonard*, 233 F.Supp.2d 151, 169-71 (D. Mass. 2002) (Young, C.J.). A pre-*Davila* opinion of the Supreme Court itself confirms that the same result should obtain here, given the Enforcement Section's undisputed

inability to bring an ERISA § 502(a) suit itself on its Massachusetts Securities Act claims.

*Franchise Tax Bd. v. Construc. Laborers Vacation Trust*, 463 U.S. 1 (1983). In *Franchise Tax Board*, a state agency brought suit in state court to enforce a state tax levy, and the taxpayer removed the suit on the basis of ERISA, *id*. at 5-7, citing one of the original labor-law complete preemption decisions and arguing for a similar result because of the tax levy's ERISA overlay, *id*. at 20-27 (addressing taxpayer's citation of *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968), which concerned Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185)). The Supreme Court rejected the attempted analogy, specifically because the state tax agency could not itself sue under ERISA:

> [I]t is clear that a suit by state tax authorities under a [state] statute like § 18818 does not "arise under" ERISA. . . . ERISA does not provide an alternative cause of action in favor of the State to enforce its rights, while § 301 [of the Labor Management Relations Act] expressly provided the plaintiff in *Avco* with a federal cause of action to replace its pre-empted state contract claim. Therefore, even though the Court appeals may well be correct that ERISA precludes enforcement of the State's levy, . . . an action to enforce the levy is not itself pre-empted by ERISA.

*Id*. at 26.[8] Because ERISA similarly "does not provide an alternative cause of action in favor of the [Enforcement Section] to enforce its rights" here, *Franchise Tax Board* controls, and the Enforcement Section's lack of ERISA § 502(a) standing provides a further reason why complete preemption cannot exist.

---

[8]     The Supreme Court later did determine to extend complete preemption to ERISA on certain occasions, in an ERISA Title I case where the plaintiff was able to sue under ERISA § 502(a). *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-67 (1987). There is no dispute that complete preemption can at times exist under ERISA Title I; Scottrade's problems are that this case involves both ERISA Title II and a plaintiff who could not have sued under ERISA § 502(a) even if the case were a Title I matter. The First Circuit case that Scottrade cites in its Notice of Removal to support complete preemption involves neither of these barriers and hence is inapposite. *Dudley Supermarket, Inc. v. Transamerica Life Ins*., 302 F.3d 1, 4 (1st Cir. 2002).

- 12 -

**B.    There Is No "Substantial Federal Question" Embedded Within the Enforcement Section's Massachusetts Securities Act Claim.**

While Scottrade places most of its eggs in the complete-preemption basket, it also appears to make an alternative argument that even if the Enforcement Section's cause of action is in fact under the Massachusetts Securities Act, removal is still appropriate because the references in the Administrative Complaint to USDOL's Fiduciary Rule add a critical "federal ingredient" to the case.  Notice of Removal ¶¶ 4, 11; *see One and Ken Valley*, 716 F.3d at 224 ("federal ingredient").  Scottrade's relative lack of enthusiasm for this alternative argument is understandable, since all that a successful invocation of it would ensure is that this Court, rather than a state-agency hearing officer, takes on the adjudication of the merits of this matter and determines, on summary judgment or after trial, whether Scottrade in fact violated the Massachusetts Securities Act.  The alternative argument is also wholly unfounded.

The First Circuit has recently summarized the "federal ingredient" doctrine:  "Federal jurisdiction will lie over a state law cause of action if the face of the complaint reveals a 'federal issue [that] is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in a federal court without disrupting the federal-state balance of power.'" *Municipality of Mayaguez v. CPDO*, 726 F.3d 8, 13 (1st Cir. 2013) (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)).  "Where all four of these requirements are met, . . . jurisdiction is proper." *Gunn*, 568 U.S. at 258.  As suggested by the conjunctive nature of the four-part test, only a "'special and small category' of cases" can qualify for removal under it, *id*. at 1064 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)).

The present case certainly does not fall within that "special and small category."  As an initial matter, the question of whether Scottrade's aggressive sales contests complied with the federal Fiduciary Rule is not "necessarily raised" in deciding whether Scottrade violated the

Massachusetts Securities Act. The repeated gravamen of the Administrative Complaint's claim under Section 204 of the Act is that Scottrade "violated its own internal policies," Adm. Compl. pp. 1, 5, 10, ¶¶ 57, 76, by continuing to run the very "contests" that its Impartial Conduct Standards purported to prohibit, *id*. p. 3.[9] This contravened a sensible Securities Division policy that financial firms in fact follow the codes of behavior that they set for themselves. *See* 950 CMR § 12.204(1)(a) ("Each broker-dealer shall observe high standards of commercial honor . . . in the conduct of its business."). While Scottrade happened to have adopted those internal policies because of the advent of the Fiduciary Rule, and while the policies may have tracked the provisions of that Rule, the Massachusetts Securities Act violation would have still existed even if Scottrade had thought up its new internal requirements entirely on its own. The Securities Division expects financial firms to practice what they preach, and the Enforcement Section charged Scottrade with violating state law for a failure to do just that.

Even if one were to assume that Scottrade's compliance with the Fiduciary Rule is "necessarily raised" because it directly underlies the Enforcement Section's Massachusetts Securities Act claim (*i.e.*, the claim is that Scottrade violated Section 204 of the Act because it did not comply with the Fiduciary Rule, rather than because it ran roughshod over an internal policy it had chosen to adopt), that federal issue would not satisfy the further requirement of being "substantial." *Gunn*, 568 U.S. at 260. For this requirement, "it is not enough that the federal issue be significant to the particular parties in the immediate suit; . . . [t]he substantiality

---

[9] Presumably recognizing the nature of the Administrative Complaint, Scottrade tries to supplement that pleading's allegations with references to various press statements that the Secretary of the Commonwealth has made. Notice of Removal ¶ 5. The First Circuit is clear, however, that the inquiry under the "federal ingredient" doctrine is limited to what "the face of the complaint reveals." *Municipality of Mayaguez*, 726 F.3d at 13.

inquiry . . . looks instead to the importance of the issue *to the federal system as a whole*." *Id.* (emphasis added). Given the just-emphasized language, the cases finding substantiality tend to involve a federal issue that will have significance for a federal executive's administration of a federal program.[10] That is clearly not the present case, where the question at most is whether a particular set of facts (those alleged in the Administrative Complaint) violated a specific federal regulation and thereby also violated state law. The Supreme Court has in fact twice declined to find substantiality in that exact scenario. *Gunn*, 568 U.S. at 253 ("state law claim alleging legal malpractice in the handling of a [federal] patent case"); *Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804, 805 (1986) ("incorporation of a federal [labelling] standard in a state-law [tort] action"); *see also Empire Healthchoice*, 547 U.S. at 701 ("fact-bound and situation-specific" federal issue not substantial). Scottrade clearly cannot meet *Gunn*'s demanding four-part standard, and the ordinary operation of the well-pleaded-complaint rule dictates remand.[11]

## II.    REMOVAL ALSO FAILS BECAUSE THE ENFORCEMENT SECTION'S ADMINISTRATIVE COMPLAINT WAS NOT INITIALLY BROUGHT IN A STATE COURT.

The removal statute, 28 U.S.C. § 1441(a), allows defendants to remove only "state-court actions that originally could have been filed in federal court." *Caterpillar Inc. v. Williams*, 482

---

[10]    *See*, *e.g.*, *Grable & Sons Metal Prod. v. Darue Engineering*, 545 U.S. 308 (2005) (how Internal Revenue Service conducts notices of tax sales); *One and Ken Valley*, 716 F.3d at 218 (implementation of federal Section 8 housing program); *Wampanoag Tribe*, 36 F.Supp.2d at 234 (federal oversight over attempted local "control of Indian tribes over gaming on federal lands").

[11]    In addition to not meeting *Gunn*'s "necessarily raised" and "substantial" requirements, this matter also is not "capable of resolution in a federal court without disrupting the federal-state balance of power." *Gunn*, 568 U.S. at 258. State securities regulation predates even the 1933 Securities Act, and state agencies and the state courts that review their decisions are fully capable of resolving federal-law issues themselves. On the other side of the equation, it is hard to identify an overriding federal interest in a regulation that the current Administration is reluctant to enforce and that a Circuit Court has stricken as *ultra vires*. *See* Notice of Remand p. 2 & n.2.

U.S. 386, 392 (1987).  Read literally, the statute limits removal to civil actions in a "*State court*," and this is exactly how recent Circuit Court decisions have interpreted it.[12]  The Tenth Circuit has thus determined that an analysis of the removal statue "begins (and ends) with [28 U.S.C.] § 1441's plain language, which permits removal only from a 'state court.'"  *Porter Trust v. Rural Water Sewer and Solid Waste Mgmt. Dist. No. 1*, 607 F.3d 1251, 1254-1255 (10th Cir. 2010).  Also believing "that the language of [the removal statute] 'should be dispositive,'" the Ninth Circuit has similarly concluded that 28 U.S.C. § 1441(a) "authorizes removal only from a 'state court,' which necessarily implies that the entity in question must be a *court . . .* [and not] an administrative agency . . . that . . . conducts court-like adjudications"  *Oregon Bureau of Labor and Industries ex rel. Richardson v. U.S. West Communications, Inc.*, 288 F.3d 414, 417-418 (9th Cir. 2002) (emphasis in the original) (quoting *Sun Buick, Inc. v. SAAB Cars USA, Inc.*, 26 F.3d 1259, 1261 (3rd Cir. 1994)).

Despite the recent federal appellate approach, the Enforcement Section recognizes that this Court must consider a 1972 First Circuit decision that prescribes a "functional" approach to the "State court" issue, where what is evaluated is [1] a state agency's "procedures and enforcement powers, [2] the locus of traditional jurisdiction over [the subject matter], and [3] the respective state and federal interests in the subject matter and the provision of a forum." *Volkswagen de Puerto Rico, Inc. v. Puerto Rico Labor Relations Bd.*, 454 F.2d 38, 44 (1st Cir. 1972).  The First Circuit's functional test, which it has never revisited, has been criticized by other Circuit Courts that believe the "test changes the meaning and the reach of the [removal] statute." *Or. Bureau of Labor*, 288 F.3d at 419.  Other courts have therefore decided that the

---

[12]      Congress's one definitional section regarding "State court" says only that the phrase "includes the *Superior Court* of the District of Columbia,"—*i.e.*, an actual judicial court.  28 U.S.C. § 1451 (emphasis added).

functional test "inappropriately expand[s] th[e] language [of 28 U.S.C. § 1441(a)] to include administrative enforcement actions," *Friends of the Earth v. Consol. Rail Corp.*, 768 F.2d 57, 62 (2nd Cir. 1985), and should be limited to the "specific context . . . [of] federal labor law . . . in which the federal interest is paramount." *Bellsouth Telecommunications, Inc. v. Varatex Telecom. Inc.*, 185 F.Supp.2d 1280, 1282 n.1 (N.D.Fla. 2002).[13]

This Court has applied the *Volkswagen* functional test in *Whelchel v. Regus Management Group, LLC*, 914 F.Supp.2d 83 (D.Mass. 2012), concluding there that removal was "unwarranted" because "the legislature did not intend the MCAD [the Massachusetts Commission Against Discrimination] to operate as a state court," and because there was not "sufficient federal interest in the case to warrant removal to a federal forum." *Id*. at 87-88. This Court conducted a careful analysis in reaching this result. It first determined that as "both state agencies and federal courts are traditional loci for discrimination claims," this factor of the *Volkswagen* functional test—to wit, "whether the locus of traditional jurisdiction over the subject matter is state or federal"—was "not determinative." *Id*. at 86. It then assessed whether MCAD "exercises powers and utilizes procedures sufficiently judicial in nature to constitute a 'state court' for removal purposes," *id.*, ultimately concluding that MCAD has both "courtlike" and "uncourtlike" powers. *Id*. 86-87. MCAD thus resembled a state court in that "[p]arties . . . engage in discovery under rules akin to the [state and federal] rules of civil procedure"; "oral

---

[13]      The Enforcement Section therefore contends that the "functional test" should be abandoned or, in the least, that it should be limited to the labor context as in *Bellsouth*. The Enforcement Section also recognizes that this Court does not itself have the authority to adopt the first contention and that it may conclude that it also does not have the authority to adopt the second. The Enforcement Section nevertheless raises these two arguments now to preserve the possibility of appellate review, whether before the First Circuit at the panel or *en banc* level or via a petition for certiorari. At the very least, and for the reasons cited by its critics, the functional test should not itself be construed expansively, given that "agencies often conduct court-like adjudications," *Or. Bureau of Labor*, 288 F.3d at 419.

argument is permitted"; and "witnesses and counsel are directed to conduct themselves according to the standards of decorum observed in the state courts." *Id*. at 86. However, MCAD also did *not* resemble a state court in that it "cannot enforce its own judgments," "exercises significant investigatory powers not possessed by a court and at times its role is prosecutorial," and "is charged with significant legislative duties, including adopting, promulgating, amending and rescinding rules to prevent discrimination." *Id*. at 86-87. Because "[c]ourts applying the functional test have found uncourtlike powers to be even more significant than courtlike powers," *id*. at 86 (internal citations omitted), this Court concluded that "the primary function of the MCAD is administrative rather than judicial." *Id.* at 87-88. It finally considered whether "there [wa]s sufficient federal interest in the case to warrant removal to a federal forum." *Id*. at 88. Since the only claim before it was a state law claim, this Court concluded that there was "a very strong state interest but little or no federal interest in the case" and, accordingly, that removal was unwarranted. *Id*.

The present case, even more than *Whelchel*, does not warrant removal. As set forth below, the Securities Division does not function as a state court, the traditional loci of jurisdiction lies with the agency, and there is no federal interest in the Securities Division's adjudicatory proceeding.

First, as discussed in the Relevant Background Section I, *see* pp. 1-3 *supra*, the Securities Division has investigatory powers, rule-making authority, and only a limited adjudicatory role, all of which make it "uncourtlike." For example, as part of its ability to conduct "public or private investigations," Mass. G.L. c. 110A, § 407(a)(1)—powers "which fit snugly within the realm of traditional prosecutorial functions," *Goldstein v. Galvin*, 719 F.3d 16, 26 (1st Cir. 2013)—the Securities Division may "subpoena witnesses," Mass. G.L. c. 110A, § 407(b), collect

evidence, and protect "investigatory materials" to prevent "prejudic[ing] . . . effective law enforcement." 950 C.M.R. § 14. 413(A). The Securities Division also has legislative authority, such as the ability to "make, amend and rescind such rules, forms, and orders as are necessary to carry out the statutory policy of the [Securities Act]." *Id*. at § 14.406. This rule-making power extends to issuing "interpretative opinions" to "interested parties," Mass. G.L. c. 110A, § 413(c), and defining "terms . . . not inconsistent with the [Securities Act]." *Id*. at § 412(a).

Although the Securities Division does have the ability to conduct "adjudicatory proceedings," 950 C.M.R. § 10.02(b)(1), it "lack[s] . . . enforcement power," *Volkswagen*, 454 F.2d at 44, which also makes it less "courtlike." Its adjudicatory hearings additionally "shall be as informal as may be reasonable and appropriate," 950 C.M.R. § 10.09(f)(1), and a hearing officer's final decision must be approved by the Director. *Id*. at § 10.09(p). Moreover, the Securities Division must turn to a state superior court if it seeks to compel a subpoenaed witness to appear, Mass. G.L. c. 110A, § 407(c) or to enjoin on penalty of contempt the acts of an individual in violation of the Massachusetts Securities Act. *Id*. at § 408. Adjudicatory decisions also are appealable only to a state superior court, "not an appellate judge or panel," thereby also making the agency "less court-like." *Darlings v. Chrysler Group, LLC*, 57 F.Supp.3d 68, 75 (D.Me. 2014). And of particular significance, the Securities Division is "uncourtlike" in that it cannot hear disputes "*inter partes*," *Volkswagen,* 454 F.2d at 44—that is to say, it cannot adjudicate "claims brought between *third parties*," *New Hampshire Bureau of Securities Regulation v. LPL Financial, LLC*, 2015 WL 4642837 at *3 (D.N.H. Aug. 4, 2015), with private entities on both sides of the captions in its proceedings.

Second, "the locus of traditional jurisdiction over the subject matter," *Whelchel*, 914 F.Supp.2d at 86, lies with the state agency. To "commence an adjudicatory proceeding" with the

Securities Division, the Enforcement Section must file "a Notice of Adjudicatory Proceeding. . . and an Administrative Complaint."  950 C.M.R. § 10.06(a).  Resolution of contested issues of fact occurs at the agency level, rather than in the state courts.  *See* Mass. G.L. c. 110A, § 411(a).

Third, as discussed in Argument Section IB, *see* pp. 13-15 *supra*, there is no substantial federal interest in this proceeding.  In particular, *see id*., "[t]his is not . . . a case where . . . the claim will . . . be decided under federal law regardless of the forum."  *Whelchel*, 914 F.Supp.2d at 88.  Given that the Securities Division does not possess the functions or powers of a state court, that the traditional loci of jurisdiction for an administrative complaint lies with the agency, and that there is no federal interest in the adjudicatory proceeding, removal was improper and the case should be remanded.

## CONCLUSION

For the foregoing reasons, this Court should allow Plaintiff Enforcement Section of the Massachusetts Securities Division's Motion to Remand.

By its attorneys,

MAURA HEALEY
ATTORNEY GENERAL

/s/ Pierce O. Cray
Pierce O. Cray, BBO # 104630
Amanda I. Morejon, BBO # 696737
Assistant Attorneys General
One Ashburton Place
Boston, MA 02108
(617) 963-2084/2037
Pierce.Cray@state.ma.us
Dated: April 13, 2018                    Amanda.Morejon@state.ma.us

## CERTIFICATE OF SERVICE

I, Amanda I. Morejon, Assistant Attorney General, hereby certify that the foregoing document, which was filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 13, 2018.

/s/ Amanda I. Morejon
Amanda I. Morejon, BBO # 696737
Assistant Attorney General