United States District Court

District of Massachusetts

```
_____
                                )
Enforcement Section of the      )
Massachusetts Securities        )
Division of the Office of the   )
Secretary of the Commonwealth,  )
                                )        Civil Action No.
          Plaintiff,            )        18-10508-NMG
                                )
     v.                         )
                                )
Scottrade, Inc.,                )
                                )
          Defendant.            )
_____     )
```

**MEMORANDUM & ORDER**

GORTON, J.

This is a dispute between the Enforcement Section of the Massachusetts Securities Division of the Office of the Secretary of the Commonwealth ("the Enforcement Section" or "plaintiff") and Scottrade, Inc., a Massachusetts registered broker-dealer ("Scottrade" or "defendant"). Plaintiff alleges that Scottrade violated its internal policy by hosting incentivized sales contests, thus violating state law. Scottrade responds that the Enforcement Section is merely attempting to enforce federal standards that were set forth in the now-vacated "Fiduciary Rule." After plaintiff filed an administrative complaint with

the Securities Division, defendant removed the action to this Court.  Pending before the Court is plaintiff's motion to remand.

## I.   **Background**

The Secretary of the Commonwealth of Massachusetts, William F. Galvin, is responsible for administrating the Massachusetts Securities Act, M.G.L. c. 110A, and "may employ such assistants and others employees as are required . . . for the administration and enforcement" of the Act. M.G.L. c. 9, § 10A. Pursuant to that latter provision, the Secretary established the Securities Division of the Office of the Secretary of the Commonwealth to

> administer and enforce [the Securities Act,] M.G.L. c. 110A and [the regulations promulgated thereunder], 950 C.M.R. 10.00 through 14.413.

950 C.M.R. § 14.406(A)(1).

In February, 2018, the Enforcement Section filed an administrative complaint against Scottrade with the Securities Division.  "In anticipation of its obligations under the upcoming Fiduciary Rule," the Enforcement Division alleges, Scottrade added an Impartial Conduct Standards section to its Brokerage and Investment Advisor Compliance Manual that provides:

> The firm does not use or rely upon quotas, appraisals, performance or personnel actions, bonuses, contests,

special awards, differential compensation or other actions
or incentives that are intended or reasonably expected to
cause associates to make recommendations that are not in
the best interest of Retirement Account clients or
prospective Retirement Account clients.

Because Scottrade held sales contests between June and July
2017 ("the Q3 sales contest") and between August and September,
2017 ("the Q4 sales contest"), the Enforcement Division claims,

Scottrade violated its own internal policies regarding the
Fiduciary Rule, thereby failing to act in good faith to
comply with the Fiduciary Rule.

The Enforcement Section alleges that Scottrade's conduct 1)
constitutes "unethical or dishonest conduct or practices" in the
securities business, in violation of M.G.L. c. 110A, §
204(a)(2)(G), and 2) demonstrates that Scottrade "failed
reasonably to supervise agents, investment adviser
representatives or other employees", in violation of M.G.L. c.
110A § 204(a)(2)(J).

The "Fiduciary Rule" to which the complaint refers is a
group of seven rules that expand the "investment advice
fiduciary" definition in the Employee Retirement Income Security
Act of 1974 ("ERISA"), codified as amended at 29 U.S.C. § 1001
et seq., and the Internal Revenue Code, 26 U.S.C. § 4975.  The
Fiduciary Rule regulates financial service providers, such as
Scottrade, that provide services to holders of Individual
Retirement Accounts ("IRAs").  One such regulation is the "Best
Interest Contract Exemption", which permits investment advice

fiduciaries to avoid prohibited transaction penalties if they enter into contracts with clients that, inter alia, affirm their fiduciary status and incorporate "Impartial Conduct Standards", including duties of loyalty and prudence. See 81 Fed. Reg. 21002 (Apr. 8, 2016), corrected at 81 Fed. Reg. 44773 (July 11, 2016), and amended by 82 Fed. Reg. 16902 (Apr. 7, 2017).

Various business groups have challenged the Rule, alleging that 1) it was inconsistent with the governing statute, 2) the DOL lacked authority to regulate the affected servicers and providers, 3) the DOL imposed legally unauthorized contract terms, 4) the Rule violated the First Amendment and 5) the Rule was arbitrary and capricious. See Chamber of Commerce of United States of Am. v. United States Dep't of Labor, 885 F.3d 360, 363 (5th Cir. 2018). In March, 2018, the United States Court of Appeals for the Fifth Circuit ("the Fifth Circuit") held that the Rule conflicted with the text of ERISA, was "unreasonable" under Chevron, U.S.A., Inc. v. N.R.D.C., Inc., 467 U.S. 837 (1984), and was an "arbitrary and capricious agency action" in violation of the Administrative Procedure Act, 5 U.S.C. § 706. That court "vacate[d] the Fiduciary Rule in toto". Id. at 388.

Scottrade simultaneously removed this administrative action to the United States District Court for the District of Massachusetts. It asserts that this Court has federal question jurisdiction because the matter "arises under and is governed by

ERISA".  Pending before the Court is plaintiff's motion to remand the case to the Enforcement Section of the Massachusetts Securities Division.

## II.   Status of Fifth Circuit vacatur

As a preliminary matter, the Court notes that Scottrade proceeds under the assumption that the decision of the Fifth Circuit vacating the Fiduciary Rule binds this Court.  At oral argument, its counsel posited that

> if a federal appellate court vacates an order, it isn't that it existed and no longer exists; it's as if it never existed at all. . . . I don't know that there's a contrary view, frankly.

That opinion is itself contrary to

> the traditional conception that a judge does not so much strike down an unconstitutional law as refuse to apply it.

Samuel Bray, Multiple Chancellors: Reforming the National Injunction, 131 Harv. L. Rev. 417, 451 (2017).

As articulated in Marbury v. Madison, 5 U.S. 137, 178 (1803), a court determines "which of [] conflicting rules governs the case." Cf. United States v. Raines, 362 U.S. 17, 21 (1960) ("This Court, as is the case with all federal courts, has no jurisdiction to pronounce any statute . . . void, . . . except as it is called upon to adjudge the legal rights of litigants in actual controversies.") (citation and internal quotation marks omitted).  There is disagreement with respect to when nationwide injunctions are appropriate. Compare Nat'l

Mining Ass'n v. U.S. Army Corps of Eng'rs, 145 F.3d 1399, 1409
(D.C. Cir. 1998) ("[W]hen a reviewing court determines that
agency regulations are unlawful, the ordinary result is that the
rules are vacated—not that their application to the individual
petitioners is proscribed.") (citation omitted) with City & Cty.
of San Francisco v. Trump, No. 17-17478, 2018 WL 3637911, at *13
(9th Cir. Aug. 1, 2018) (describing nationwide injunctions as
necessary only in "exceptional cases").  Nationwide injunctions
have been criticized as a matter of doctrine and policy. See
Trump v. Hawaii, 138 S. Ct. 2392, 2429 (2018) (Thomas, J.,
concurring) ("[U]niversal injunctions are legally and
historically dubious.) and Arizona v. Evans, 514 U.S. 1, 23 n.1
(1995) (Ginsburg, J., dissenting) ("[W]hen frontier legal
problems are presented, periods of 'percolation' in, and diverse
opinions from, state and federal appellate courts may yield a
better informed and more enduring final pronouncement by this
Court.").

    As the following analysis may demonstrate, whether or not
the Fifth Circuit has vacated the Fiduciary Rule on a nationwide
and universal basis is not dispositive of this motion.  The
statement of that court that it vacates "the Fiduciary Rule in
toto" appears immediately after it explains that the
"comprehensive regulatory package is plainly not amendable to
severance." See Chamber of Commerce, 885 F.3d at 388.  Thus, "in

toto" presumably refers to how much of the Fiduciary Rule was being vacated, i.e. all of it, and not that the Court was invoking nationwide and universal relief.  There is no explicit statement that the Court expected its judgment to apply nationwide and therefore defendant's contention that the Fifth Circuit decision binds this Court is tenuous at best.

### III. **Motion to remand**

Plaintiff asserts that neither the complete preemption nor substantial federal question exception to the well-pleaded complaint rule applies and, as a result, federal question jurisdiction does not exist and removal was improper.  Removal was also purportedly unwarranted because the administrative complaint was not initially brought in a state court which is a prerequisite for removal.

Defendant responds that federal question jurisdiction exists because ERISA completely preempts the plaintiff's claims and resolution of the state law claims necessarily involves consideration of a substantial issue of federal law.  Scottrade contends, moreover, that the action was brought in the equivalent of a state court under the relevant controlling authority, thus satisfying the removal statute.

District courts "have original jurisdiction of all civil actions arising under" the laws of the United States. 28 U.S.C. § 1331.  All cases removed from state court shall be remanded if

at "any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). The removal statute is to be strictly construed and defendants have the burden of demonstrating the existence of federal jurisdiction. Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999).

A "cause of action arises under federal law only when the plaintiff's well-pleaded complaint" raises an issue of federal law. Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987) (citing Gully v. First National Bank, 299 U.S. 109 (1936)) (additional citation omitted).  By requiring that the federal question be stated on the face of the complaint, the well-pleaded complaint rule "envisions that the plaintiff is master of his complaint and that a case cannot be removed" if the allegations in the complaint are premised only on local law. Lopez-Munoz v. Triple-S Salud, Inc., 754 F.3d 1, 4 (1st Cir. 2014) (quoting Negrón-Fuentes v. UPS Supply Chain Solutions, 532 F.3d 1, 6 (1st Cir.2008)) (internal quotation marks omitted).

There are two common exceptions to the well-pleaded complaint rule.

First, under the federal ingredient doctrine, a well-pled complaint arises under the laws of the United States if a state law cause of action "requires resolution of a substantial question of federal law" in dispute between the parties.

Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California, 463 U.S. 1, 13 (1983). The First Circuit Court of Appeals ("First Circuit") has cautioned that the doctrine "endures in principle but should be applied with caution and various qualifications." Almond v. Capital Properties, Inc., 212 F.3d 20, 23 (1st Cir. 2000).

Second, under the "artful pleading" or "complete preemption" doctrine, if a court concludes that a plaintiff has attempted to defeat removal by omitting necessary federal questions, "it may uphold removal even though no federal question appears on the face" of the complaint. Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 475 (1998). When such federal claims come dressed in state law clothing, "the district court can simply recharacterize them to reveal their true basis." Negron-Fuentes, 532 F.3d at 6.

Scottrade submits that the administrative complaint encompasses both exceptions and that the causes of action therefore "arise under" the laws of the United States.

### A.    Federal Ingredient

The Enforcement Section contends that federal ingredient jurisdiction does not exist because analysis of the federal Fiduciary Rule is unnecessary to determine whether Scottrade violated the Massachusetts Securities Act. Scottrade rejoins that this case is of "central concern" to ERISA, such that

resolving the claims here would involve resolution of a
substantial issue of federal law.

Federal ingredient jurisdiction is "controversial" and
should be applied sparingly. Almond, 212 F.3d at 23.  It is
appropriate where the face of a complaint reveals a federal
issue that is

> (1) necessarily raised, (2) actually disputed, (3)
> substantial, and (4) capable of resolution in a federal
> court without disrupting the federal-state balance of
> power.

> Municipality of Mayaguez v. Corporacion Para el Desarrollo
> del Oeste, Inc., 726 F.3d 8, 13 (1st Cir. 2013) (quoting Gunn v.
> Minton, 568 U.S. 251, 258 (2013)).

No federal issue is necessarily raised from the face of
plaintiff's administrative complaint.  That complaint alleges
two claims under Massachusetts state law: 1) that Scottrade
"engaged in [] unethical or dishonest conduct or practices" in
violation of M.G.L. c. 110A, § 204(a)(2)(G) and 2) that
Scottrade "failed reasonably to supervise agents, investment
adviser representative or other employees" in violation of
M.G.L. c. 110A, § 204(a)(2)(J).

A court could resolve both claims without any analysis of
the DOL Fiduciary Rule. It is true that Scottrade adopted its
Impartial Conduct policy in response to the Fiduciary Rule but
this Court need not interpret the Fiduciary Rule nor rule on its
validity to determine whether Scottrade violated that policy.

The Enforcement Section regularly brings actions under § 204 when companies fail to comply with their internal policies. See, e.g., In re Merrill Lynch, Pierce, Fenner & Smith Inc., 2016 WL 6567103, at *7 (Mass. Sec. Div. 2016) (alleging that respondent violated § 204 by "failing to comply with its internal policies and procedures regarding prior approval of internal-use material"); In re Revere Securities LLC et al., 2016 WL 6567104, at *3 (Mass. Sec. Div. 2016) (alleging that broker-dealer violated § 204 by "violating [the employer's] written policies and procedures").

The same is true where companies fail to supervise their employees reasonably. See In re SII Investments, Inc., 2017 WL 4455949, at *2 (Mass. Sec. Div. 2017) (alleging that respondent committed "regulatory violations that were at odds with [its] own internal policies and procedures").  Because a court can determine whether Scottrade violated its own policies or reasonably supervised its employees without assessing the DOL Fiduciary Rule, no federal issue is "necessarily raised". One & Ken Valley Hous. Grp. v. Me. State Hous. Auth., 716 F.3d 218, 224 (1st Cir. 2013).  Accordingly, federal ingredient jurisdiction is not present in this case.

## B.   Complete preemption

The Enforcement Section avers that complete preemption is improper because ERISA's preemption provisions do not apply to

IRAs and because it, as a state agency, would not have standing to sue under that statute.  Scottrade responds that ERISA's preemption provisions do apply to the retirement accounts at issue in this case and that a functional analysis of the administrative warrants preemption.

ERISA contains an exclusive civil enforcement provision at § 502(a), 29 U.S.C. § 1132(a), which provides a private cause of action for participants or beneficiaries of ERISA plans. See Hamilton v. Partners Healthcare Sys., Inc., 209 F. Supp. 3d 397, 412 (D. Mass. 2016).  Among other things, § 502(a) entitles a beneficiary to bring actions to recover benefits due to him or her under the terms of a plan, to enforce "rights under the terms of the plan, or to clarify [] rights to future benefits." In Metro. Life Ins. Co. v. Taylor, 481 U.S. 58 (1987), the United States Supreme Court held that state actions that fall within the scope of § 502(a) are completely preempted by that provision and are removable to federal court. Id. at 62 (finding plaintiff's common law contract and tort claims for denial of medical care, where coverage was available as a result of an ERISA-regulated benefit plan, pre-empted by § 502(a)).  More recently, the Supreme Court has explained that the

> integrated enforcement mechanism, ERISA § 502(a), 29 U.S.C.
> § 1132(a), is a distinctive feature of ERISA, and essential
> to accomplish Congress' purpose of creating a comprehensive
> statute for the regulation of employee benefit plans.

_Aetna Health Inc._ v. _Davila_, 542 U.S. 200, 208 (2004).

As a result, § 502(a) of ERISA allows for the conversion of

state law complaints into federal claims that are completely

preempted and removable to federal court. _Id._ at 209.

In _Davila_, the Supreme Court explained that a cause of

action is completely preempted under ERISA

> if an individual, at some point in time, could have brought
> his claim under ERISA § 502(a)(1)(B), and [] there is no
> other independent legal duty that is implicated by a
> defendant's actions . . . .

_Id._ at 210.

### 1.   Application to IRAs

The Enforcement Section contends that its current action is

not removable because ERISA's preemption provisions do not apply

to IRAs.  That contention is unavailing.  Many IRAs are subject

to Title 1 of ERISA because they fall within the definition of

employee benefit plans and are subject to ERISA preemption. _See_,

_e.g._, _Cline_ v. _Industrial Maintenance Engineering & Contracting

Co._, 200 F.3d 1223, 1230 (9th Cir. 2000).  Thus, the

administrative complaint filed in this case encompasses

retirement accounts that are not IRAs and are subject to

§ 502(a) preemption.  Indeed, plaintiff equivocated on this

point in its reply brief and conceded the issue at the hearing

on this motion.

**2.  Complete preemption under <u>Davila</u>**

The Enforcement Section's second, and more plausible,

argument is that its claim cannot be preempted under § 502(a)

because it is not entitled to sue under ERISA.  Defendant

rejoins that plaintiff relies on out-of-date and inapposite case

law.

Relying on the rule of <u>In re Pharm. Indus. Average</u>

<u>Wholesale Price Litig.</u>, 309 F. Supp. 2d 165 (D. Mass. 2004)

("<u>Wholesale Price</u>"), the Enforcement Section contends that a

claim is only preempted under ERISA if plaintiff has

> standing to sue under Section 502(a) . . . [and]
> plaintiffs' claim falls within the scope of an ERISA
> provision that plaintiffs can enforce via § 502(a).

<u>Id.</u> at 173.

Defendant responds that <u>Davila</u>, decided after the District of

Massachusetts opinion in <u>Wholesale Price</u>, established a test in

which only the claims, not the litigant, are relevant.

This Court agrees with the Enforcement Section that <u>Davila</u>

established a multi-part test in which the adjudicating forum

considers both the type of entity bringing the claim <u>and</u> the

substance of the claim itself.  In <u>Davila</u>, the Supreme Court

concluded that

> if an individual, at some point in time, could have brought
> his claim under ERISA § 502(a)(1)(B), and where there is no
> other independent legal duty that is implicated by a
> defendant's actions, then the individual's cause of action
> is completely pre-empted by ERISA § 502(a)(1)(B).

<u>Davila</u>, 542 U.S. at 210; <u>accord</u> <u>New Jersey Carpenters & the</u>
<u>Trustees Thereof</u> v. <u>Tishman Const. Corp. of New Jersey</u>, 760 F.3d
297, 303 (3d Cir. 2014) (applying <u>Davila</u> to § 502(a) generally).

The Second Circuit Court of Appeals ("Second Circuit") has
separated this test into multiple "prongs".  Under the first
prong, concerning whether an individual can bring a claim under
§ 502(a), that court requires the forum to consider

> whether the plaintiff is the <u>type</u> of party that can bring a
> claim pursuant to § 502(a)(1)(B); and second, [] whether
> the <u>actual claim</u> that the plaintiff asserts can be
> construed as a colorable claim for benefits pursuant to
> § 502(a)(1)(B).

<u>Montefiore Med. Ctr.</u> v. <u>Teamsters Local 272</u>, 642 F.3d 321, 328
(2d Cir. 2011) (citing <u>Marin Gen. Hosp.</u> v. <u>Modesto & Empire</u>
<u>Traction Co.</u>, 581 F.3d 941, 948 (9th Cir. 2009)).  Other Circuit
Courts of Appeal that have addressed the question have employed
the multi-prong approach which this Court now adopts. <u>See</u>, <u>e.g.</u>,
<u>DB Healthcare, LLC</u> v. <u>Blue Cross Blue Shield of Arizona, Inc.</u>,
852 F.3d 868, 878 (9th Cir. 2017) ("Claims are preempted by
ERISA only if two conditions are met: (1) the litigant could
have brought the claim under ERISA's civil enforcement
provision, and (2) the claims have no basis in an independent
legal duty.") (quoting <u>Davila</u>, 542 U.S. at 210); <u>New Jersey</u>
<u>Carpenters & the Trustees Thereof</u> v. <u>Tishman Const. Corp. of New</u>
<u>Jersey</u>, 760 F.3d 297, 303 (3d Cir. 2014) ("We have held that a
claim is completely preempted, and thus removable, under ERISA

§ 502(a) only if: (1) the plaintiff could have brought the claim under § 502(a); and (2) no other independent legal duty supports the plaintiff's claim.") (citing Pascack Valley Hosp. Inc. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 400 (3d Cir. 2004)).

At first blush, it may appear that complete preemption depends entirely upon the claims asserted and not the party asserting them. The brief analysis in Negron-Fuentes v. UPS Supply Chain Sols., 532 F.3d 1, 7 (1st Cir. 2008), for instance, makes no mention of the plaintiff's statutory standing. That decision held that an action is removable if any of a plaintiff's claims

> are in substance duplicated or supplanted by the ERISA cause of action (in which case removal based on complete preemption is proper) or instead whether all are directed at violation of a legal duty . . . independent of ERISA or the plan terms, thus defeating removal.

Id. at 7 (quoting Davila, 542 U.S. at 210) (internal quotation marks and citation omitted).

It is not surprising, however, that Negron made no mention of the plaintiff's ERISA standing because the plaintiff there was the prototype of a party who can sue under ERISA. The defendant in that case argued that § 502(a) completely preempted the action because the claim sought "ERISA benefits from an ERISA plan on behalf of an ERISA plan participant." See id. at 7 n.4. The reason that removability depended upon the substance

of the plaintiff's claims was that, as a "participant in an
employee benefit plan governed by ERISA", see id. at 6, he was
"an individual . . . [who] could have brought his claim under
ERISA § 502(a)(1)(B)." Davila, 542 U.S. at 210; 29 U.S.C. §
1132(a)(1) ("A civil action may be brought by a participant or
beneficiary . . . .").

    In the present case, by contrast, the Enforcement Section
is not "an individual . . . [who] could have brought his claim
under" § 502(a). See Franchise Tax Bd. of State of Cal. v.
Constr. Laborers Vacation Tr. for S. California, 463 U.S. 1, 27
(1983) (concluding that suit by state tax agency does not "arise
under" § 502 where plaintiff was not an enumerated party
entitled to seek relief under that section).  "ERISA carefully
enumerates the parties entitled to seek relief", see id., and
state agencies are not such parties.  Because plaintiff could
not have brought its claims under § 502(a), its causes of action
are not pre-empted by ERISA.

    Scottrade agrees that the Enforcement Section "does not
have standing to sue under ERISA."  Nonetheless, it contends,
this Court still has subject matter jurisdiction.  That
contention, however, puts the cart before the horse.  Given that
no federal ingredient jurisdiction exists, this Court possesses
subject matter jurisdiction only if one of plaintiff's claims is
completely preempted.  Because complete preemption under ERISA

-17-

requires that "the plaintiff is the type of party that can bring a claim", see Montefiore, 642 F.3d at 328, this Court has subject matter jurisdiction only if the Enforcement Section can bring a claim under ERISA.  It cannot and thus jurisdiction is lacking.

In a last gasp, defendant suggests that the issue in this case is of such central importance to ERISA that this Court should re-characterize the complaint as a federal common law action.  The Court declines that invitation.  Courts are cautioned to be "careful not to allow federal common law to rewrite ERISA's carefully crafted statutory scheme." State St. Bank & Tr. Co. v. Denman Tire Corp., 240 F.3d 83, 89 (1st Cir. 2001).  Accordingly, a common law claim is appropriate only "if necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in large by Congress." Bollman Hat Co. v. Root, 112 F.3d 113, 118 (3d Cir. 1997) (internal quotation omitted).  Examples of such common law claims include identifying the standard of judicial review of a plan administrator's decisions, see Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111-12 (1989), or permitting a claim for restitution for funds misallocated from one ERISA plan to another. See State St. Bank, 240 F.3d at 89.  The present case bears no resemblance to such limited exercises of common law authority.  Scottrade correctly notes that this Court possesses

the requisite authority cites no case law supporting its
application here.

Because, the Enforcement Section is not the kind of party
that can bring a claim pursuant to § 502(a), ERISA does not
completely preempt either claim in the administrative complaint
and neither claim "arises under" ERISA.  This Court lacks
subject matter jurisdiction and plaintiff's motion to remand
will be allowed.

### C.   State court

Plaintiff submits that removal also was unauthorized
because the Enforcement Section's administrative complaint was
not initially brought in a state court.  Defendant retorts that,
under the First Circuit's functional approach to the removal
statute, the Securities Division is sufficiently similar to a
state court to justify removal in this case.

The removal statute provides that, as a general matter,

any civil action brought in a State court of which the
district courts of the United States have original
jurisdiction, may be removed by the defendant . . . .

28 U.S.C. 1441(a).

Notwithstanding the text of that statute, this circuit has
explained that a state administrative "board may . . . be a
court for removal purposes." Volkswagen de Puerto Rico, Inc. v.
Puerto Rico Labor Relations Bd., 454 F.2d 38, 44 (1st Cir.

1972).  In <u>Volkswagen</u>, the First Circuit adopted a functional
approach to removal, which focuses on

> a number of relevant factors, including the Board's
> procedures and enforcement powers, the locus of traditional
> jurisdiction over breaches of contract, and the respective
> state and federal interests in the subject matter and in
> the provision of a forum.

<u>Id.</u> at 44.

The First Circuit has not yet applied the <u>Volkswagen</u>
factors in a subsequent case and more recent caselaw in other
circuits has rejected the functional approach.  <u>See</u> <u>Porter Tr.</u> v.
<u>Rural Water Sewer & Solid Waste Mgmt. Dist. No. 1</u>, 607 F.3d
1251, 1254 (10th Cir. 2010) ("[I]n light of the plain language
of § 1441, which permits removal only from a 'state court,' we
do not find their legal reasoning persuasive."); <u>Oregon Bureau</u>
<u>of Labor & Indus. ex rel. Richardson</u> v. <u>U.S. W. Commc'ns, Inc.</u>,
288 F.3d 414, 418 (9th Cir. 2002) ("The functional test goes
beyond the language of the statute, because the functional test
is a judicially-developed analysis that neither appears in, nor
is necessarily implied by, the statutory language.").  The
Enforcement Section contends that the functional test should be
abandoned, or, at least, limited to the labor context.  As both
parties correctly note, however, that test is binding on this
Court and therefore guides its analysis.

### 1. Agency Functions and Powers

Under the first prong of the Volkswagen test the court evaluates whether the state agency exercises powers and utilizes procedures that are sufficiently judicial in nature to constitute a "state court" for removal purposes.

There is no doubt that the Securities Division conducts adjudicatory proceedings.  Respondents receive fair notice of the proceeding and the charges against them. M.G.L. c. 30A, § 11(1).  A record of the proceedings is kept. Id. § 11(6); 950 M.C.R. § 10.09(m),(o).  Evidence is offered, received and evaluated. M.G.L. c. 30A, § 11(2),(4); 950 M.C.R. § 10.09(h), (i).  A respondent has a right to counsel, 950 M.C.R. § 10.03(a), and the right to call witnesses and submit rebuttal evidence. M.G.L. c. 30A, § 11(3).  The proceeding culminates in a reasoned decision, M.G.L. 30A, § 11(8); 950 M.C.R. § 10.09(p), subject to a right to judicial review in the superior court, M.G.L. c. 30A, § 14; id. c. 110A, § 411(a).

Courts applying the functional test have, however, found non-adjudicatory powers to be even more significant than judicatory powers. Whelchel v. Regus Mgmt. Grp., LLC, 914 F. Supp. 2d 83, 86 (D. Mass. 2012) (citation omitted) (holding that the Massachusetts Commission Against Discrimination was not a court for the purposes of the removal statute).  By statute, the Secretary performs prosecutorial and investigatory functions

-21-

including administering and enforcing the Massachusetts Securities Act, see M.G.L. c. 9, § 10A; id. c. 110A, § 406(a), instituting proceedings, see id. c. 110A, § 407(d), and determining whether grounds exist to believe that "any person has violated . . . any provision of" the Act. See id. § 407(a). The First Circuit Court of Appeals ("First Circuit") has held that the Secretary exercises a dual adjudicatory-prosecutorial role and is protected by prosecutorial immunity for proceedings in the Securities provision where "he was performing prosecutorial functions." Goldstein v. Galvin, 719 F.3d 16, 26 (1st Cir. 2013).  Indeed, that Court observed that the

> [a]cts that collectively comprise the pursuit of an enforcement action fit snugly within the realm of traditional prosecutorial functions.

Id. (citing Butz v. Economou, 438 U.S. 478, 516 (1978)).

In the rare instances in which removal from a state agency has been granted, "federal courts have emphasized that the agency was considered judicial under state law." Whelchel, 914 F. Supp. 2d at 87 (D. Mass. 2012); see also Volkswagen, 454 F.2d at 44 n.9 ("We note that the Puerto Rico Supreme Court has recently referred to the Board's function as a quasi-judicial one.") (citation omitted).  Defendant has not provided, and this Court is unaware of, any such pronouncement about the Securities Division from the Massachusetts courts.  Indeed, Goldstein, the most analogous case Scottrade cites for this proposition, holds

that the Secretary's "dual status as one who performs both
adjudicatory and prosecutorial functions" does not deprive him
of an otherwise applicable immunity defense. Goldstein, 719 F.3d
at 28.

Of equal importance to the first prong, the Securities
Division does not conduct proceedings between third parties. Cf.
Ins. Com'r of Puerto Rico v. Doral Ins. Agency, Inc., No. CIV
05-2230CCC, 2006 WL 3196472, at *2 (D.P.R. Nov. 2, 2006)
(concluding that Puerto Rico Office of the Insurance
Commissioner satisfied the first Volkswagen prong because, inter
alia, "the hearings held at the OIC are inter partes").  The
Volkswagen court emphasized that the "threshold characteristic
of a civil action in a state court [is] that it is inter
partes." Volkswagen, 454 F.2d at 44 (quoting Commissioners of
Road Imp. District, etc. v. St. Louis S. W. Ry. Co., 257 U.S.
547, 559 (1922) (internal quotation marks omitted).  The
Securities Division does not and cannot hear claims brought
between third parties and thus lacks that "threshold
characteristic" of a state court.

Although the Securities Division possesses many court-like
powers, on balance, it does not function as a court for removal
purposes in this case.

The other Volkswagen factors do not revive Scottrade's
theory.

### 2. Traditional jurisdiction over the subject matter

Scottrade insists that the administrative complaint is an ERISA action in "state law clothing" and that the federal courts are the proper forum for ERISA claims.

As this Court has already observed, the claims in this action can be resolved without reference to federal law.  The Enforcement Section commences adjudicatory proceedings in the Securities Division by filing "a Notice of Adjudicatory Proceeding and an Administrative Complaint." 950 C.M.R. § 10.06(a).  Whereas the Volkswagen court discerned that courts have been the traditional forum for breaches of contract, see Volkswagen, 454 F.2d at 44, an administrative action alleging violation of the Massachusets Securities Act is traditionally adjudicated in the Securities Division. Cf. New Hampshire Bureau of Sec. Regulation, 2015 WL 4642837 at *3.

Thus, the second Volkswagen factor favors remand.

### 3. Federal and state interests

Defendant, reiterating that plaintiff is simply attempting to "enforce compliance with the standards of the federal fiduciary rule," submits that the federal interest in regulating employee benefit plans is great.

Removal may be appropriate where ERISA expressly preempts a state law claim. See, e.g., Nationwide Mut. Ins. v. N.H. Dept. of Labor, No. 07-CV-241-PB, 2007 WL 2695387 (D.N.H. Sept. 12,

2007).  Here, however, the Court has determined that plaintiff's
claims for violations of the Massachusetts Securities Act are
not preempted.  States have a significant interest in applying a
statute in the forum it has established for that purpose.
Darling's v. Chrysler Grp., LLC, 57 F. Supp. 3d 68, 74-75 (D.
Me. 2014).  The Secretary established the Securities Division
(by leave of the Legislature) to administer and enforce the
Massachusetts Securities Act. See 950 C.M.R. § 14.406(A)(1).

Accordingly, the third Volkswagen prong also favors
plaintiff.

### 4. Analogous case law

District Courts within the First Circuit faced with the
removal question involving agencies similar to the Securities
Division have recognized that removal is inappropriate.  Thus,
the Massachusetts Commission Against Discrimination was deemed
not court-like because its non-adjudicatory powers were more
significant than its adjudicatory powers and because the agency
was not considered judicial under state law. See Whelchel, 914
F. Supp. 2d at 86-88.  Likewise, the New Hampshire Bureau of
Securities Regulation was deemed not court-like because the
proceeding was not inter partes and the agency "appears to be
more administrative than judicial." New Hampshire Bureau of Sec.
Regulation, 2015 WL 4642837, at *3.  Both analyses apply with
equal force to the Securities Division.

The Massachusetts Securities Division is not a court for the purposes of the removal statute.  That conclusion, standing alone, compels this Court to allow plaintiff's motion to remand.

### ORDER

For the foregoing reasons, plaintiff's motion for remand (Docket No. 10) is **ALLOWED.**

 **So ordered.**

/s/ Nathaniel M. Gorton_____

Nathaniel M. Gorton
United States District Judge

Dated August 16, 2018